UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**LIZZIE PUGH**, *an individual,*

    Plaintiff,

v.

**FIFTH THIRD BANK, NATIONAL ASSOCIATION**, *a foreign corporation*, **FIFTH THIRD FINANCIAL CORPORATION**, *a foreign corporation*,

    Defendants.

Case No: 22-cv-12028
Hon. Robert H. Cleland
Mag. Anthony P. Patti

---

| **DEBORAH GORDON LAW** | **DINSMORE & SHOHL LLP** |
|---|---|
| Deborah L. Gordon (P27058) | J. Travis Mihelick (P73050) |
| Elizabeth Marzotto Taylor (P82061) | Attorney for Defendants |
| Sarah Gordon Thomas (P83935) | 900 Wilshire Drive, Suite 300 |
| Molly Savage (P84472) | Troy, Michigan 48084 |
| Attorneys for Plaintiff | (248) 647-6000 / Fax (248) 647-5210 |
| 33 Bloomfield Hills Parkway, Suite 220 | Travis.mihelick@dinsmore.com |
| Bloomfield Hills, Michigan 48304 | |
| (248) 258-2500 | Katherine A. Rasmussen (P83661) |
| dgordon@deborahgordonlaw.com | 255 E. Fifth Street, Suite 1900 |
| emarzottotaylor@deborahgordonlaw.com | Cincinnati, Ohio 45202 |
| sthomas@deborahgordonlaw.com | (614) 628-6982 / Fax (513) 977-8141 |
| msavage@deborahgordonlaw.com | Katherine.rasmussen@dinsmore.com |

---

This civil action arises out of the same transaction or occurrence as another action previously filed and dismissed before this Court: *Pugh v. Fifth Third Bancorp et al.*, Case No. 22-cv-11433.

# PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Lizzie Pugh, by and through her attorneys, Deborah Gordon Law, complains against Defendants as follows:

## JURISDICTION & VENUE

1.  This is an action by Plaintiff Lizzie Pugh against First Third Bank, National Association and its subsidiary Fifth Third Financial Corporation (collectively "Fifth Third") for race discrimination in the making of contracts and in public accommodations.

2.  This Court has federal question jurisdiction, pursuant to 28 U.S.C § 1331, as Count I, alleging violations of 42 U.S.C. § 1981, arises under the laws of the United States.

3.  This Court has diversity jurisdiction, pursuant to 28 U.S.C. § 1332, as this matter is between citizens of different states and the amount in controversy exceeds $75,000.

4.  Plaintiff is domiciled in Detroit, Michigan.

5.  Defendant Fifth Third Bank, National Association is a corporation headquartered in Cincinnati, Ohio and incorporated under the laws of the District of Columbia.

6.  Defendant Fifth Third Financial Corporation is headquartered in Cincinnati, Ohio and incorporated under the laws of the State of Ohio.

2

7. Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events giving rise to the claims occurred in the Eastern District of Michigan.

## STATEMENT OF FACTS

8. Plaintiff Lizzie Pugh is a 71-year-old Black woman.

9. Ms. Pugh was born and raised in Alabama during the Jim Crow Era.

10. Ms. Pugh moved to Detroit, Michigan in 1971 at the age of 20.

11. She worked for Detroit Public Schools for 36 years until her retirement and has since served as deacon at her church.

12. On Saturday, April 9, 2022, Ms. Pugh traveled with her church group to Soaring Eagle Casino & Resort ("Soaring Eagle") in Mt. Pleasant, Michigan, for a group outing.

13. While at Soaring Eagle, Ms. Pugh won several thousand dollars on a slot machine. Ms. Pugh elected to immediately pay the taxes on her winnings at the casino.

14. Ms. Pugh collected her winnings, less taxes, via check issued by Soaring Eagle and a small amount of cash.

15. On Monday, April 11, 2022, Ms. Pugh went to a Fifth Third branch in Livonia, Michigan to open a savings account and to deposit her winnings into the newly created account.

16. Ms. Pugh did not have an account with Fifth Third prior to April 11, 2022.

3

17. Upon entering the bank, several bank employees saw Ms. Pugh waiting to be helped but refused to acknowledge or assist her.

18. After waiting several minutes to be helped, a bank employee ("Employee #1") called Ms. Pugh into her office; Ms. Pugh explained that she wanted to open a savings account and deposit a check into the account.

19. Ms. Pugh handed Employee #1 her check from Soaring Eagle Casino.

20. Employee #1 asked Ms. Pugh where she worked.

21. Ms. Pugh explained that she was retired and the check was for money she had won at Soaring Eagle Casino.

22. Employee #1, a white woman, without any investigation, told Ms. Pugh that her check was "fraudulent" and that Fifth Third would not allow her to deposit the check.

23. Employee #1's determination that the check was "fraudulent" was unreasonable and unfounded. The check had no indicia of fraudulent activity.

24. The payor information contains Soaring Eagle's logo and address.

25. The payee information contained Ms. Pugh's name and the same home address listed on her driver's license.

26. The check lists the issuing bank's information and the memo line states "SLOT JACKPOT."

27. The check contains a notation which states, "TWO SIGNATURES REQUIRED" and is signed by two payors.

28. Employee #1 refused to give Ms. Pugh her check back and called in another Fifth Third employee ("Employee #2").

29. Employee #2, a white woman, also insisted that the check was fraudulent and refused to give it back to Ms. Pugh.

30. Ms. Pugh asked the employees to call 9-1-1 because she would not be leaving without her check.

31. Employee #1 and #2 refused and took Ms. Pugh's check to another employee's ("Employee #3", a white woman) office.

32. After several minutes, Ms. Pugh went into Employee #3's office and asked for her check back.

33. Employee #3 told Ms. Pugh that because the check was fraudulent, Fifth Third would not allow Ms. Pugh to open an account and deposit the check.

34. Ms. Pugh would have opened a savings account and deposited her check into the account had Fifth Third not refused to provide banking services to her.

35. The employees eventually gave Ms. Pugh her check back.

36. Ms. Pugh left Fifth Third and went to another bank where she was able to deposit her check.

37. The check cleared the following day without issue.

38. Upon information and belief, Defendants have allowed similarly situated persons who are not Black to open savings accounts.

39. Upon information and belief, Defendants have allowed similarly situated persons who are not Black to deposit checks.

## COUNT I
### *Race Discrimination in the Making of a Contract in Violation of 42 U.S.C. § 1981*

40. Plaintiff repeats and realleges the foregoing paragraphs as though set forth in full herein.

41. Plaintiff is a member of a protected class based on her race.

42. Plaintiff, as a Black person, belongs to an identifiable class of persons who are subject to discrimination based on their race.

43. Defendant Fifth Third, and its subsidiaries, is a place of public accommodation that provides banking services to all members of the public.

44. Plaintiff made herself available to receive Defendants' banking services, including opening a bank account and depositing money into the account, in the manner in which the services are ordinarily provided.

45. Plaintiff did not enjoy the privileges and benefits of the contracted for experience because she was deprived of Defendants' banking services while similarly situated persons outside the protected class were not deprived of those services.

46. Plaintiff did not enjoy the privileges and benefits of the contracted for experience because she received services in a markedly hostile manner and in a manner which a reasonable person would find objectively unreasonable.

47. Defendants' decisions to treat Plaintiff less favorably than other individuals, to refuse to allow Plaintiff to open a bank account, to refuse to deposit Plaintiff's check, and to withhold Plaintiff's check from her were made based on Plaintiff's race.

48. Defendants acted knowingly and intentionally in discriminating against Plaintiff based on her race.

49. Defendants' actions resulted in discrimination against Plaintiff in the terms, conditions, and privileges of a financial institution because of race.

50. Defendants' actions, as described above, were in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

51. Defendants' discriminatory actions abridged Plaintiff's right to make and enforce contracts.

52. Defendants' actions, in refusing to allow Plaintiff to open a bank account and refusing to allow Plaintiff to deposit her check, were profoundly contrary to Defendants' manifest financial interests, such that they constitute "marked hostility."

53. Defendants' actions, in refusing to allow Plaintiff to open a bank account and refusing to allow Plaintiff to deposit her check, were so far outside of widely-accepted business norms such that they constitute "marked hostility."

54. Defendants' actions, in refusing to allow Plaintiff to open a bank account and refusing to allow Plaintiff to deposit her check, were so arbitrary on their face, such that they constitute "marked hostility."

55. As a direct and proximate result of Defendants' wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, outrage and humiliation, mental anguish, anxiety, physical and emotional distress, and the loss of the ordinary pleasures of everyday life.

## COUNT II
### *Race Discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act*

56. Plaintiff repeats and realleges the foregoing paragraphs as though set forth in full herein.

57. Defendant Fifth Third is a financial institution, and provides a public service, and is a place of public accommodation as defined by Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2301 *et seq*.

58. Plaintiff was denied the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages, and/or accommodations because of her race.

59. Plaintiff's race the motivating factor in Defendants' decision to treat her less favorably than other individuals, refusal to allow her to open a bank account, refusal to deposit her check, and decision to withhold Plaintiff's check from her.

60. Defendants' actions resulted in discrimination against Plaintiff in the full utilization of or benefit of a financial institution or the services and activities provided by the financial institution because of race.

61. Defendants' actions also resulted in discrimination against Plaintiff in the terms, conditions, and privileges of a financial institution because of race.

62. Defendants' actions further resulted in denying Plaintiff the full and equal enjoyment of the services, facilities, privileges, and advantages of a public accommodation or public service, because of race.

63. Defendants, by its agents, representatives, and employees, was predisposed to discriminate on the basis of race, and acted in accordance with that predisposition.

64. Defendants' actions as described above were in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

65. As a direct and proximate result of Defendants' wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, outrage and humiliation, mental anguish, anxiety, physical and emotional distress, and loss of ordinary pleasures of everyday life.

## **RELIEF REQUESTED**

Plaintiff demands judgment and legal relief against Defendants as follows:

**A.  Legal Relief**

1. Compensatory damages in whatever amount Plaintiff is found to be entitled;

2. Punitive damages in whatever amount Plaintiff is found to be entitled;

3. Liquidated damages in whatever amount Plaintiff is found to be entitled; and

4. An award of interest, costs, reasonable attorney fees, and expert witness fees.

**B.     Declaratory and Equitable Relief**

1. An injunction from this Court prohibiting any further acts of discrimination, intimidation, or retaliation;

2. An award of interest, costs, and reasonable attorney fees; and

3. Whatever other declaratory and/or equitable relief appears appropriate at the time of final judgment.

| | |
|---|---|
| Dated:  September 22, 2022 | Respectfully submitted,<br>**DEBORAH GORDON LAW**<br>/s/Deborah L. Gordon (P27058)<br>Elizabeth Marzotto Taylor (P82061)<br>Sarah Gordon Thomas (P83935)<br>Molly Savage (P84472)<br>Attorneys for Plaintiffs<br>33 Bloomfield Hills Parkway, Suite 220<br>Bloomfield Hills, Michigan 48304<br>(248) 258-2500<br>dgordon@deborahgordonlaw.com<br>emarzottotaylor@deborahgordonlaw.com<br>sthomas@deborahgordonlaw.com<br>msavage@deborahgordonlaw.com |

## JURY DEMAND

Plaintiff Lizzie Pugh, by her attorneys Deborah Gordon Law, hereby demands a trial by jury of all the issues in this cause.

| | |
|---|---|
| Dated:  September 22, 2022 | Respectfully submitted,<br>**DEBORAH GORDON LAW**<br>/s/Deborah L. Gordon (P27058)<br>Elizabeth Marzotto Taylor (P82061)<br>Sarah Gordon Thomas (P83935)<br>Molly Savage (P84472)<br>Attorneys for Plaintiffs<br>33 Bloomfield Hills Parkway, Suite 220 |

Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
sthomas@deborahgordonlaw.com
msavage@deborahgordonlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing and service of said documents to all parties through their counsel of record.

**DEBORAH GORDON LAW**
/s/Deborah L. Gordon (P27058)
Elizabeth Marzotto Taylor (P82061)
Sarah Gordon Thomas (P83935)
Molly Savage (P84472)
Attorneys for Plaintiff
33 Bloomfield Hills Parkway, Suite 220
Bloomfield Hills, Michigan 48304
(248) 258-2500
dgordon@deborahgordonlaw.com
emarzottotaylor@deborahgordonlaw.com
sthomas@deborahgordonlaw.com
msavage@deborahgordonlaw.com